UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL DENTON,

                Petitioner,

v.

RON HAYNES,

                Respondent.

CASE NO. 3:20-cv-05066-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: October 30, 2020

The District Court has referred this petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 to United States Magistrate Judge J. Richard Creatura. *See* Dkt. 2. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A)–(B) and local Magistrate Judge Rules MJR3 and MJR4.

Petitioner, who is incarcerated, challenges his 2016 convictions and sentences for two counts of custodial assault and one count of felony harassment against Pierce County Jail staff. Petitioner raises two cognizable grounds for relief in his petition: (1) that the superior court erred when it imposed exceptional consecutive sentences without submitting aggravating factors

to a jury; and (2) that the superior court erred when it refused to allow petitioner to present a diminished capacity defense at trial. The state court did not unreasonably apply clearly established federal law when it concluded that the superior court permissibly imposed consecutive sentences without submitting aggravating factors to a jury. Further, the state court did not unreasonably determine that the superior court did not preclude petitioner from presenting a diminished capacity defense at trial. Therefore, neither of petitioner's grounds for relief warrant granting his petition. Accordingly, the petition should be denied.

## BACKGROUND

### I. Proceedings in Federal Court

Petitioner, proceeding *in forma pauperis*, brought this petition in January 2020. Dkts. 1, 4, 5. Petitioner challenges May 2016 convictions for custodial assault on November 16, 2015 and for custodial assault and felony harassment on November 18, 2015. *See* Dkt. 25-1, at 2, 22. The superior court ordered him to serve two consecutive sentences of 60 months each. *See* Dkt. 25-1, at 6–7, 26.

Petitioner raises three grounds for relief. His first ground for relief is that it was a Sixth Amendment violation not to allow aggravating sentencing factors to be determined by a jury, and his second ground for relief is that it was an Eighth and Fourteenth Amendment violation not to allow him to present a diminished capacity defense. Dkt. 5, at 5–7. He also raised a third ground for relief regarding being housed in solitary confinement, which the Court dismissed as improperly brought in a § 2254 petition. Dkt. 23, at 3.

The Court served the first two grounds (Dkt. 14, at 1–2), and respondent filed an answer and partial state court record of proceedings. *See* Dkts. 24, 25, 25-1. At the Court's direction,

1  respondent later supplemented the record of state court proceedings with the remainder of the

2  trial transcripts. *See* Dkts. 29, 29-1.

3  Petitioner has filed a response to the answer (Dkt. 27), and the matter is ripe for review.

4  **II. State Court Record**

5  **A. Trial and Direct Appeal**

6  Petitioner proceeded *pro se* in the Pierce County Superior Court on his charges in two

7  cases, which were consolidated (Cause Nos. 15-1-01709-8 and 15-1-04621-9). Dkt. 25-1, at 2,

8  26, 44.

9  In May 2016, a jury convicted petitioner of the custodial assault of Anthony Powell on

10  November 16, 2015, and the custodial assault of Mario Moreno and felony harassment on

11  November 18, 2015. *See* Dkt. 25-1, at 46.

12  Division Two summarized the facts underlying petitioner's convictions as follows:

> While incarcerated in the Pierce County Jail, on two separate occasions Denton threw liquid from his cell toilet on staff. On November 16, 2015, Denton threw an unknown liquid on Deputy Andy Powell as he arrived to deliver Denton a sack lunch. The liquid hit Powell's shirt, pants and left forearm. Powell testified that Denton, who remained locked in his cell throughout the incident, also verbally threatened to attack Powell. The State charged Denton with custodial assault against Powell and felony harassment.
>
> On November 18, 2015, Denton again threw liquid at Deputies Matt Watson and Mario Moreno. During meal time, Moreno approached Denton's cell and discovered that Denton blocked the "trap door" with his hand and arm. Moreno ordered Denton to remove his arm and radioed Watson for assistance. Watson arrived and also ordered Denton to remove his arm. Denton refused. Watson threatened to hit Denton's hand with his service flashlight if he did not. Watson attempted to clear Denton's arm from the trap door. Denton resisted, and Watson struck Denton's hand "medium" hard three times with his flashlight.
>
> Denton withdrew his arm, picked up his cup, and announced that he was going to throw feces on the deputies. Denton dipped his cup in the toilet and two times threw the contents at the inner door of his cell. Watson backed away and did not get hit. However, liquid from Denton's second attempt passed through a gap in the Plexiglas inner door and contacted Moreno's back, left arm, and parts of his

|   |   |
|---|---|
| 1 | hair.  The State charged Denton with custodial assault against Moreno, custodial assault against Watson, and felony harassment. |
| 2 |   |

Dkt. 25-1, at 43–44.  Division Two of the Washington State Court of Appeals affirmed petitioner's convictions in a consolidated appeal.  Dkt. 25-1, at 43.

### B. Personal Restraint Petitions

Petitioner filed a personal restraint petition ("PRP") in September 2018 asserting, as relevant here, that he had a right to have a jury determine the factors justifying imposition of an exceptional sentence (Dkt. 25-1, at 160–63) and that the superior court unconstitutionally barred him from presenting a diminished capacity defense.  Dkt. 25-1, at 164–70.  Petitioner relied on a 2017 mental evaluation.  Dkt. 25-1, at 181.

Division Two interpreted petitioner's PRP as pertaining to another criminal case against him, which was dismissed, and the Court therefore dismissed the PRP as moot.  Dkt. 25-1, at 298.  Petitioner requested discretionary review in the Washington State Supreme Court (Dkt. 25-1, at 300), which interpreted petitioner's PRP as challenging the May 2016 custodial assault and felony harassment convictions.  *See* Dkt. 25-1, at 309–10.  However, the Supreme Court Commissioner denied review on the basis that petitioner's arguments were irrelevant to the validity of his May 2016 convictions.  Dkt. 25-1, at 310.

Division Two allowed petitioner to bring a second PRP, in which he challenged his May 2016 convictions on the basis that a jury did not determine the facts underlying his exceptional sentence, that he could not present a diminished capacity defense, and that DOC improperly confined him in solitary confinement.  *See* Dkt. 25-1, at 406–07.  Regarding petitioner's first two arguments, Division Two held,

> First, under RCW 9.94A.589(1)(a), when a trial court sentences a defendant for more than one offense, it can order the sentences for those offenses run

1  consecutively only under the exceptional sentence provisions of RCW 9.94A.535. RCW 9.94A.535(2)(c) authorizes a trial court to impose an exceptional sentence without a finding of fact by a jury when the defendant "has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." A trial court's imposition of an exceptional sentence under this statute without submission of the issue to a jury does not violate a defendant's Sixth Amendment right to a jury. *State v. Alvarado*, 164 Wn.2d 556, 567–69[](2008).

Here, Denton's offender scores for both sentences exceeded 9, so without consecutive sentences one of his offenses would go unpunished. Therefore, the trial court did not err in imposing consecutive sentences under RCW 9.94A.535(2)(c) and .589(1)(a).

Second, Denton does not present any evidence that the trial court prevented him from presenting a diminished capacity defense. Therefore, we reject Denton's second argument.

Dkt. 25-1, at 407. Division Two also rejected Denton's solitary confinement argument. Dkt. 25-1, at 407. The Supreme Court Commissioner denied discretionary review of Division Two's opinion on January 6, 2020. *See* Dkt. 25-1, at 437–39.

The Court notes that neither the state court records (Dkt. 25-1), nor the supplemental state court records (Dkt. 29-1), contain any mandate or certificate of finality related to petitioner's state court proceedings. *See* Dkt. 5. However, the petition appears timely, and respondent does not contest the timeliness of the petition. *See* Dkt. 24.

### EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 131 S.Ct. at 1388. A hearing is not required if the allegations would not

entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011). The Court does not find it necessary to hold an evidentiary hearing because, as discussed in this report and recommendation, petitioner's grounds for relief may be resolved on the existing state court record.

## DISCUSSION

### I.     AEDPA Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

The first exception, § 2254(d)(1), allows habeas relief on the basis that an adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The Supreme Court has ruled that a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An

unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407.  In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

The second § 2254 exception, § 2254(d)(2), provides for habeas relief if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Federal habeas courts must presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

**II.     Ground One:  Exceptional Sentence Imposed without Jury**

In his first ground for relief, petitioner alleges that his Sixth Amendment rights were violated when the superior court imposed exceptional consecutive sentences without submitting the issue to a jury.  *See* Dkt. 5, at 5.  Petitioner contends that he never waived his right to have a jury determine aggravating sentencing factors before the superior court imposed an exceptional sentence.  *See id.*; Dkt. 27, at 5, 14.

### A.     Facts Related to Ground One

On May 12, 2016, a jury found petitioner guilty of two counts of custodial assault and one count of felony harassment. *See* Dkt. 29-1, at 370–71. On June 17, 2016, the superior court sentenced petitioner to 60 months of incarceration for the custodial assault of Anthony Powell. *See* Dkt. 25-1, at 10. Also, on June 17, 2016, the superior court sentenced petitioner to 60 months of incarceration for the custodial assault and felony harassment of Mario Moreno. *See id.* at 26. The superior court determined that petitioner had an offender score of 9+ for each of these convictions. *Id.* at 3, 23. The superior court ordered petitioner's sentences to run consecutively. *See id.* at 4, 24, 437.

In its ruling denying review of petitioner's PRP, the Washington State Supreme Court concluded as follows—

> [Petitioner] first argues that the superior court unlawfully ran his sentences consecutively as a form of exceptional sentence without submitting aggravating sentencing factors to the jury. But the court based the exceptional sentence on [petitioner]'s high offender scores, as a result of which some of his crimes would have effectively gone unpunished if the court had imposed only standard sentences. A jury need not find the existence of this aggravating factor. *See* RCW 9.94A.535(2)(c); *State v. Alvarado*, 164 Wn.2d 556, 568–69, 192 P.3d 245 (2008).

Dkt. 25-1, at 437–38.

### B.     Discussion

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Four years later the Supreme Court held "the 'statutory maximum' for *Apprendi* purposes is the maximum a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by defendant.*" *Blakely v. Washington*,

1  542 U.S. 296, 303 (2004) (emphasis in original).  "In other words, the relevant 'statutory

2  maximum' is not the maximum sentence a judge may impose after finding additional facts, but

3  the maximum he may impose *without* any additional findings.  When a judge inflicts punishment

4  that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law

5  makes essential to the punishment,'. . . and the judge exceeds his proper authority." *Id*. at 303–

6  304 (emphasis in original) (internal citation omitted).  However, "[t]he decision to impose

7  sentences consecutively is not within the jury function that 'extends down centuries into the

8  common law.'" *Oregon v. Ice*, 555 U.S. 160, 168 (2009) (quoting *Apprendi*, 503 U.S. at 477).

9  "Instead, specification of the regime for administering multiple sentences has long been

10  considered the prerogative of state legislatures." *Id.*

11      Here, petitioner was sentenced within the standard range for each conviction, with a

12  sentence of 60 months incarceration under Cause No. 15-1-01709-8, and a sentence of 60 months

13  incarceration under Cause No. 15-1-04621-9.  *See* Dkt. 25-1, at 6, 26.  The superior court then,

14  using aggravating factors pursuant to RCW 9.94A.535(2)(c), ran the sentences consecutively.

15  *See id.* at 4, 7, 24.  Petitioner contends that the superior court erred in imposing consecutive

16  sentences based on aggravating factors, which should have been determined by a jury.  *See* Dkt.

17  5, at 5.  However, petitioner was not sentenced above the statutory maximum for each crime as

18  set out by state legislature—rather, he was sentenced within the standard range for each

19  conviction, and the superior court ran each sentence consecutively due to petitioner's high

20  offender scores, as a result of which some of his current crimes would have effectively gone

21  unpunished had the court imposed only standard, concurrent sentences.

22      As explained in *Ice*, "[t]he decision to impose sentences consecutively is not within the

23  jury function[.]"  555 U.S. at 168.  Therefore, it was within the superior court's discretion, not

24

the jury, to impose petitioner's sentences consecutively.  Further, "[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994).  So long as a state sentence "is not based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern." *Makal v. State of Arizona,* 544 F.2d 1030, 1035 (9th Cir. 1976).  The superior court's decision to impose consecutive sentences was within the superior court's discretion and is not within this Court's purview.

Therefore, petitioner has failed to demonstrate that the state court's finding that imposing consecutive sentences comported with petitioner's Sixth Amendment right to a jury trial (the jury determining aggravating sentencing factors) was not contrary to, or an unreasonable application of, clearly established federal law.  *See Ice*, 555 U.S. at 168; *Taylor v. McDonald*, No. 10-cv-0177-MMA (BGS), 2011 WL 3021838, at *15–17 (S.D. Cal. Mar. 7, 2011) (finding the state court did not unreasonably apply federal law when it determined the trial court did not violate the petitioner's federal constitutional right to a jury trial in imposing consecutive sentences); *Colon v. Hedgepeth*, , No. CIV S-07-1400 LKK KJM, 2010 WL 1798230, at *4 (E.D. Cal. May 3, 2010) (internal quotations omitted) ("Because a trial judge makes the concurrent-vs.-consecutive sentencing decision after the jury has made the factual findings necessary to subject the defendant to the statutory maximum sentence on each offense and the decision does not implicate the defendant's right to a jury trial on facts that are the functional equivalent of elements of an offense, the decision to impose consecutive sentences does not violate the defendant's constitutional right to a jury trial.").

Accordingly, petitioner's first ground for relief should be denied.

1     **III.    Ground Two: Failure to Allow Presentation of Diminished Capacity Defense**

2     In his second ground for relief, petitioner alleges that the trial court violated his Eighth

3 and Fourteenth Amendment rights in refusing to allow him to present a diminished capacity

4 defense. *See* Dkt. 5, at 7. In support of his claim, petitioner submits a copy of a clinical and

5 psychological evaluation regarding his diminished capacity that was conducted for an unrelated

6 prosecution in March 2017. *See* Dkt. 27, at 53–89.

7     **A.    Facts Related to Ground Two**

8     During a pretrial hearing held in March 2016, while petitioner was represented by

9 counsel, petitioner raised the issue of "doing an insanity plea." Dkt. 29-1, at 76. During the

10 same hearing, petitioner's counsel motioned the superior court to allow petitioner to proceed *pro*

11 *se*. After conducting a colloquy with petitioner, the superior court allowed petitioner to proceed

12 *pro se* and appointed standby counsel. *See* Dkt. 29-1, at 80, 83–85. However, prior to that

13 hearing, petitioner's counsel explored the possibility of an insanity defense, but counsel was

14 unable to find an expert that would testify that petitioner had a "major mental illness" that would

15 support an insanity defense. *See id.* at 76–77. Although petitioner stated that he had evidence

16 that would support an insanity defense, he did not present any evidence to the superior court at

17 that time, and the superior court noted that "there is no evidence to justify" an insanity defense.

18 *Id.* at 75. Petitioner did not make a request to be allowed to present a diminished capacity

19 defense during the March 2016 pretrial hearing.

20     During another pretrial hearing in May 2016, petitioner motioned the superior to court "to

21 change [his] plea to a plea of not guilty by reason of insanity" in a separate, unrelated

22 prosecution, Cause No. 15-1-03696-5. Dkt. 29-1, at 120. The superior court did not rule on his

23 request, noting that "if [petitioner] has the ability to request an evaluation concerning his mental

24

health status back in September 2015, then that can come at a later time" "when that case is going to trial." *Id.* at 123–24. The superior court further noted that the documents that petitioner submitted in support of his motion were not relevant to his mental condition in 2015 when he committed the crimes charged because these were evaluations from 2008 and 2012. *See id.* at 123–124. Petitioner did not make a request to be allowed to present a diminished capacity defense during the May 2016 pretrial hearing.

During the trial that resulted in the convictions petitioner challenges herein, conducted from May 9, 2016, to May 12, 2016, petitioner proceeding *pro se* did not motion the superior court to present a diminished capacity defense, nor did he present any evidence or request an evaluation regarding his mental state at the times that the crimes were committed in November 2015.

In denying review of petitioner's PRP, the Washington Supreme Court concluded as follows—

> [Petitioner] . . . contends that the superior court prevented him from asserting a diminished capacity defense, apparently denying his requests for a capacity evaluation. But the Court of Appeals observed that [petitioner] presented no evidence that the superior court prevented him from asserting a diminished capacity defense, and [petitioner] does not now show here that the Court of Appeals erred. He points out that he presented with his personal restraint petition an evaluation that was conducted in another prosecution that resulted in the superior court imposing an exceptional sentence below the standard range. But those materials do not establish that the superior court in this case precluded [petitioner] from presenting a diminished capacity defense. He refers to certain parts of the superior court docket, but his references do not support his assertions.

Dkt. 25-1, at 438.

### B. Discussion

As initial matter, petitioner and respondent disagree over whether the superior court denied petitioner's request to present a diminished capacity defense. *Compare* Dkt. 5, at 7

1 (arguing that the superior court "failed/refused to allow" petitioner to present a diminished
2 capacity defense), *with* Dkt. 24, at 15–17 (arguing that the superior court did not preclude
3 petitioner from raising a diminished capacity defense).  Having reviewed the state court record,
4 the Court finds that the record is somewhat unclear as to this issue.  However, as discussed
5 below, the Court concludes that, even construing the superior court's denial of an insanity
6 defense during the March 2016 pretrial hearing as a denial to present a diminished capacity
7 defense, the superior court did not err because petitioner did not present any evidence in support
8 of such a defense.

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (internal citations omitted). Under Washington State law, to maintain a diminished capacity defense, a criminal defendant must produce expert testimony demonstrating that a mental disorder, not amounting to insanity, impaired the defendant's ability to form the culpable mental state at the time of the crime charged. *State v. Atsbeha*, 16 P.3d 626, 633 (Wash. 2001).  "Diminished capacity is distinguishable from insanity because as a legal defense the latter has to do only indirectly, if at all, with a specific mental state." *State v. Gough*, 768 P.2d 1028, 1030 (Wash. App. Ct. 1989); *see also Lewis v. Uttecht*, No. CV-11-324-JPH, 2012 WL 2466577, at *14 (E.D. Wash. Apr. 18, 2012) (noting that the insanity and diminished capacity defenses are distinct defenses under Washington law).  "[D]iminished capacity does not *ipso facto* follow from insanity." *Gough*, 768 P.2d at 1030.

Here, petitioner failed to request a diminished capacity defense at any time during the state court trial proceedings. *See Gough*, 768 P.2d at 1030.  Furthermore, petitioner failed to present any relevant evidence to the superior court—nor does petitioner now point to any

relevant evidence—that would support a diminished capacity defense in the challenged cases. As the superior court noted during the March 2016 pretrial hearing, "[t]here is no evidence to justify" such a defense. Dkt. 29-1, at 75.

Although petitioner contends that a 2017 clinical and forensic psychological evaluation regarding diminished capacity (Dkt. 27, at 53–89) supports a diminished capacity defense in this case, this evaluation does not establish that the superior court erred in denying any diminished capacity defense in relation to the challenged criminal convictions because this evaluation does not demonstrate petitioner's mental state during the relevant time period in 2015. The superior court addressed this same issue of relevancy of evidence in the May 2016 pretrial hearing, noting that a 2008 mental health appraisal and 2012 mental status questionnaire "don't have any real relevance to [petitioner's] mental condition in . . . 2015." Dkt. 29-1, at 124. Petitioner fails to show that the superior court erred where petitioner presented no evidence tending to support the asserted diminished capacity defense. *Atsbeha*, 16 P.3d at 633.

Given that petitioner failed to present any relevant evidence to the superior court that would tend support a diminished capacity defense, and he does not now present evidence that the superior court erred, petitioner has failed to demonstrate that the state court's decision to deny any such defense resulted in an unreasonable determination of facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2); *Atsbeha*, 16 P.3d at 633; *Gough*, 768 P.2d at 1030.

Accordingly, petitioner's second ground for relief should be denied.

**CERTIFICATE OF APPEALABILITY**

Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

(COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

## CONCLUSION

For the reasons set forth herein, the petition for habeas corpus should be denied.  A certificate of appealability should not issue.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **October 30, 2020**, as noted in the caption.

Dated this 13th day of October, 2020.

J. Richard Creatura
United States Magistrate Judge